UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID DALL,                           :
                                      :
     Plaintiff,                       :
                                      :
     v.                               :
                                      :
CERTIFIED SALES, INC.,                :    CASE NO. 3:08CV19(DFM)
                                      :
     Defendant,                       :
                                      :
     v.                               :
                                      :
NORTHERN INS. CO.                     :
                                      :
     Third-Party Defendant.           :

RULING ON MOTIONS FOR SUMMARY JUDGMENT

This is a dispute regarding alleged defects in a yacht
purchased by plaintiff David Dall from defendant Certified Sales,
Inc. ("Certified").  The defendant has impleaded a third-party
defendant, Northern Insurance Company ("Northern"), on the
grounds that if the plaintiff is entitled to damages, Northern
must indemnify Certified.

Pending before the court are the defendant's Motion for
Partial Summary Judgment (doc. #45) and the third-party
defendant's Motion for Summary Judgment (doc. #46).[1]

I.   Factual Background

Except as noted, the following facts are undisputed for
purposes of this motion.  In August 2004, the defendant offered
for sale on its website a damaged 1988 50-foot Bertram

_____

[1]The parties have consented to trial before a Magistrate Judge
pursuant to 28 U.S.C. §636(c).  (Doc. #44.)

Convertible Motor Yacht known as the "Double Trouble."  (Def's Local Rule 56(a)(1) Statement, doc. #45-2, ¶6. 5.)  On October 5, 2004, the plaintiff submitted a written offer to purchase the vessel and a $10,000 deposit. (Id., ¶6.)  On October 22, 2004, after some negotiation, the plaintiff submitted a final offer to purchase the vessel for $310,000. (Id., ¶7.)  On October 28, 2004, he paid the balance of the purchase price, and the defendant issued him a bill of sale.  (Id., ¶8.)  It is undisputed that the sale documents said that plaintiff was purchasing the vessel "as is;" the plaintiff takes the position, however, that those documents were the product of fraud.  (3rd Party Def's Rule 56(a)(1) Statement, doc. #48, ¶8; Pl's Rule 56(a)(2) response, doc. #55, ¶8.)

The parties dispute whether the defendant made misrepresentations to the plaintiff regarding the vessel's engines.[2]  The plaintiff alleges that the defendant told him that the vessel's engines were "fresh," meaning that they were "freshly rebuilt."  (Compl., doc. #1, ¶¶ 8, 11.)[3]  He also alleges that when he asked to water-test the vessel, the defendant refused to permit such a test, telling him that,

---

[2]The defendant and third-party defendant contend that summary judgment is appropriate despite these disputes of fact.

[3]The plaintiff's complaint also alleges that the defendant misrepresented that the vessel was owned free and clear of any liens.  (Compl., ¶7, 23.)  The motions do not discuss this allegation.

because the vessel was out of the water for winter storage and was stored behind 20 other vessels, it would be too burdensome to move all of the boats in order to place the Double Trouble in the water. (Id., ¶ 11.) In the spring of 2005[4], when the vessel was launched for the first time, the plaintiff learned that the engines had damage resulting from a massive engine failure that had occurred at least 12 months prior. (Id., ¶19.) Plaintiff alleges that, but for the defendant's misrepresentations, he would not have entered into a contract to purchase the vessel. (Id., ¶¶26-27.) He "has offered to return the boat in exchange for the purchase price and the cost of the repairs." (Id., ¶28.)

On January 7, 2008, plaintiff filed this action, and he served the complaint on the defendant thereafter.[5] (Id., ¶13.) The defendant later impleaded the third-party defendant, alleging that if the plaintiff prevails, then the third-party defendant is

---

[4]The plaintiff alleges the launch was "on or about April 2005" while the defendant says it was May 18. (Compl., ¶18; Def's Local Rule 56(a)(1) Statement, doc. #45-2, ¶11; Pl's Local Rule 56(a)(2) Statement, doc. #58, ¶11.) This disagreement has no significance for the pending motions.

[5]The plaintiff claims the complaint was served on January 15, 2008; the defendant claims it was not served until March 5, 2008. (Def's Local Rule 56(a)(1) Statement, doc. #45-2, ¶14; Pl's 26(a)(2) Statement, doc. #58, ¶14.) This disagreement is not significant for the pending motions.

under an indemnification obligation.[6]  The plaintiff has not
cross-claimed against the third-party defendant.

It is undisputed that the parties are of diverse citizenship
for jurisdictional purposes.  There is, however, a dispute as to
the amount in controversy.  The plaintiff's complaint alleges
that he "has expended approximately $150,000 in repairing the
defects in the engines and associated costs."  (Compl., doc. #1,
¶25.)[7]  During the course of discovery, however, the plaintiff
produced evidence of only about $46,000 worth of repairs.  (3rd
Party Def's Rule 56(a)(1) Statement, doc. #48, ¶14.)  Although
the court's Scheduling Order required plaintiff to serve a damage
analysis by September 30, 2008, plaintiff did not serve a formal
damage analysis but instead produced the $46,000 worth of bills.
(3rd Party Def's Rule 56(a)(1) Statement, doc. #48, ¶13.)

II.  Standard of Review

A party is entitled to summary judgment if the pleadings,
depositions, answers to interrogatories, and admissions, together
with affidavits, show that there is no genuine issue as to any
material fact and that the party is entitled to judgment as a

---

[6]The defendant's third-party complaint alleges that the third-party defendant owned the yacht and appointed the defendant as its agent to market the yacht for sale.  (Def's Answer and Counterclaim, doc. #6, ¶¶ 4, 6.)  This allegation appears to be disputed, but that dispute does not bear on the present motions.

[7]He also alleges that he would not have purchased the vessel but for the defendant's misrepresentations, and as a result, he has suffered damages in the amount of $460,000. (Id., ¶¶ 25, 27.)

matter of law.  See Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "A party opposing a . . . motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'"  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 324).  "[T]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004)(internal citation and quotation marks omitted).  "[A]s to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  Nora Bevs., Inc. v. Perrier Group of Am. Inc., 164 F.3d 736, 742 (2d Cir. 1998), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court views the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

III. Jurisdiction

The third-party defendant moves for summary judgment on

grounds that this court lacks diversity jurisdiction.[8]  It argues that the plaintiff has only produced documentary evidence of $46,000 worth of repairs to the vessel so there is an insufficient amount in controversy.  Because this argument is jurisdictional, the court begins with it.

This court has jurisdiction over civil actions where the amount in controversy is greater than $75,000, excluding interest and costs, and is between "citizens of different states." 28 U.S.C. § 1332(a).  A party seeking to invoke jurisdiction "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (internal citation and quotation marks omitted).  As the Second Circuit has noted, that burden is "hardly onerous" because there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (internal citation and quotation marks omitted).

---

[8]The complaint alleges that the court has both diversity and admiralty jurisdiction over this matter.  As both pending motions note, courts in this circuit hold that admiralty jurisdiction does not apply to disputes regarding a contract to purchase a vessel, because such contracts are not maritime in nature.  See, e.g., CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 n. 4 (2d Cir. 1982); Unicorn Bulk Traders Ltd. v. Fortune Maritime Enterprises, Inc., No. 08 Civ. 9710(PGG), 2009 WL 125751, 1 (S.D.N.Y. Jan. 20, 2009). The plaintiff does not, in response, make any argument distinguishing his case from this settled law.

"To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold."  Id. (internal citation and quotation marks omitted). The Second Circuit has described this as "a high bar." Id.  "The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id. (internal citations and quotation marks omitted). "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." Tongkook, 14 F.3d at 785.[9]

The plaintiff's complaint alleges that he has expended approximately $150,000 to repair the defect.  He has submitted an affidavit stating that he has expended "approximately $150,000 in repairing the defects in the engines and associated costs, although I have only been able to locate $45,000 worth of repair bills."  (Pl's Aff., doc. #56, ¶25.)  In his briefing, he argues that, despite not being able to find the remaining documentation, he will testify to his additional repair expenditures at trial.[10]

_____

[9]The parties also dispute whether the third-party defendant failed to preserve its jurisdictional defense during the course of the litigation. However, subject matter jurisdiction cannot be conferred by waiver.  See Herrick Co. v. SCS Communs., Inc., 251 F.3d 315, 329 (2d Cir. 2001)("subject matter jurisdiction is an unwaivable sine qua non for the exercise of federal judicial power")(internal citation and quotation marks omitted).

[10]The plaintiff also argues that his complaint seeks rescission of the contract and a refund of his $310,000 payment.  The third-party defendant, in a reply brief, questions the legal basis for any such claim, while the defendant concedes that it cannot be

Plaintiff's inability to find all of the documentation might prove to be a serious handicap during the course of the trial. Moreover, his alleged noncompliance with the court's scheduling order and Fed. R. Civ. P. 26(a)(1)(A)(iii) could yet have serious repercussions.  However, in light of the presumptions outlined by the Second Circuit, the plaintiff's inability to produce paperwork to show the repair costs does not, by itself, strip the court of subject matter jurisdiction.  The third-party defendant has not met its burden of proving "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003).  Its motion for summary judgment is denied.

## III. Statutes of Limitation

Having determined that it has jurisdiction, the court now turns to the defendant's motion for partial summary judgment. The defendant argues that it is entitled to judgment on Counts 1, 2 and 4 of plaintiff's complaint because they are barred by the applicable statutes of limitations.[11]

---

determined on summary judgment.  The court need not reach this issue in light of its conclusion that plaintiff's repair claim satisfies the jurisdictional minimum.  The plaintiff's CUTPA claim, which he claims would entitle him to punitive damages, is discussed below.

[11]The parties are in agreement that Connecticut law applies and that this court, sitting in diversity, enforces Connecticut's statutes of limitations.  See Chappetta v. Soto, 453 F. Supp. 2d 439, 442 (D. Conn. 2006);  Slekis v. AMTRAK, 56 F. Supp. 2d 202,

Count 1 alleges that "Dall was fraudulently induced to enter into the Contract."  (Compl., doc. #1, ¶26.)[12]  Count 2 is a fraudulent misrepresentation claim, and Count 4 is a CUTPA claim. Count 3, which sounds in contract, is not at issue in this partial motion for summary judgment.

The court begins with plaintiff's tort claims, Counts 1 and 2.[13]  The defendant moves for judgment under Connecticut's three-year statute of limitations for torts, Conn. Gen. Stat. §52-577, which provides that such claims must be brought "within three

---

204 (D. Conn. 1999).

[12]To the extent that the plaintiff argues Count 1 is a contract claim or a rescission claim, bringing it under a longer statute of limitations, the court is unpersuaded.  On its face, Count 1 alleges fraudulent inducement. Although Count 1 arguably includes some factual allegations that might be relevant to a contract or rescission claim as well, those allegations are all incorporated in the contract claim, Count 3, which survives summary judgment.

[13]The plaintiff alleges fraudulent inducement and fraudulent misrepresentation.  Under Connecticut law, both torts require essentially the same showing.  See Veritas-Scalable Inv. Prods. Fund, LLC v. Fb Foods, Inc., 238 F.R.D. 339, 343 (D. Conn. 2006)(internal citation omitted). See also Dorsey v. Mancuso, 23 Conn. App. 629 (1990).

> The essential elements of a cause of action in fraud are:
> (1) a false representation was made as a statement of fact;
> (2) it was untrue and known to be untrue by the party
> making it; (3) it was made to induce the other party to act
> upon it; and (4) the other party did so act upon that false
> representation to his injury . . . [T]he party asserting
> such a cause of action must prove the existence of the
> first three of [the] elements by a standard higher than the
> usual fair preponderance of the evidence, which higher
> standard we have described as clear and satisfactory or
> clear, precise and unequivocal.

Harold Cohn & Co. v. Harco Int'l, 72 Conn. App. 43, 51 (2002).

years from the date of the act or omission complained of."   The

defendant argues that any alleged fraudulent conduct was

completed by October 28, 2004, the date the bill of sale was

signed.   This lawsuit was filed in 2008, more than three years

after that date.[14]

The plaintiff responds that the statute of limitations was

tolled by Conn. Gen. Stat. §52-595, which provides that "[i]f any

person, liable to an action by another, fraudulently conceals

from him the existence of the cause of such action, such cause of

action shall be deemed to accrue against such person so liable

therefor at the time when the person entitled to sue thereon

first discovers its existence."   He contends that the defendant's

refusal to put the vessel in the water so that he could take a

test drive was "fraudulent concealment" within the meaning of

Conn. Gen. Stat. §52-595.   Because of the fraudulent concealment,

he argues, the statute of limitations did not begin to run until

he first learned of the existence of his cause of action in the

spring.

To prove fraudulent concealment under Conn. Gen. Stat. §52-

595, the plaintiff must show that the defendant: (1) had actual

---

[14]The plaintiff's suggestion that the statute of limitations
for a fraud claim begins to run only when the plaintiff discovers
the fraud is erroneous.   The statute of limitations for fraud
claims is Conn. Gen. Stat. §52-577.   Wedig v. Brinster, 1 Conn.
App. 123, 136 (1983).   Section 52-577 is a statute of repose that
runs from "the date of the act or omission complained of, not the
date when the plaintiff first discovers an injury."   Watts v.
Chittenden, 115 Conn. App. 404, 410 (2009)(internal citations and
quotation marks omitted).

awareness, rather than imputed knowledge, of the facts necessary to establish plaintiff's cause of action; (2) intentionally concealed these facts from the plaintiff; and (3) concealed the facts for the purpose of delaying plaintiff's filing of a lawsuit.  Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP, 281 Conn. 84, 105 (2007), citing Bartone v. Robert L. Day Co., 232 Conn. 527, 532 (1995).  The burden of proving these elements is upon the plaintiff.  Bartone, 232 Conn. at 533.  See also Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 420 (2d Cir. 1999).  Fraudulent concealment must be proven "by the more exacting standard of clear, precise, and unequivocal evidence."  Falls Church Group, 281 Conn. at 105. The evidence can be direct or circumstantial; proof by circumstantial evidence is sufficient where rational minds could reasonably and logically draw the necessary inferences.  Id., 281 Conn. 84, 110 (2007).

Thus, for the statute of limitations to be tolled for fraudulent concealment, the plaintiff must prove that the defendant had actual knowledge of the facts necessary to establish the plaintiff's cause of action and that it intentionally concealed those facts for the purpose of delaying the filing of a lawsuit.  The defendant argues that the plaintiff cannot prove all elements of fraudulent concealment.

The plaintiff, who has the burden of proof and who has had every opportunity to conduct discovery, has submitted no

evidence- direct or circumstantial- to suggest that the defendant knew the facts necessary to establish the plaintiff's cause of action or that it concealed those facts for the purpose of delaying the filing of his lawsuit.  The plaintiff fails to go beyond the pleadings to designate specific facts showing a genuine issue for trial. See Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004).  He relies, instead, on his own affidavit, stating, *inter alia*, that the defendant "knew or should have known that the engines were not fresh and they hid this fact from me, so I would purchase the boat and then delay in bringing an action."  (Pl's Aff., doc. #56, ¶21.)  The plaintiff's conclusory statement, standing alone, is insufficient to create an issue of fact.

The plaintiff having failed to carry his burden of proof on the fraudulent concealment tolling claim, the defendant is entitled to summary judgment on the plaintiff's tort claims under the applicable statute of limitations, Conn. Gen. Stat. §52-577. Summary judgment is granted as to Counts 1 and 2.

The defendant also moves for summary judgment as to Count 4, the CUTPA claim, on statute of limitations grounds. Plaintiff's only response is that the statute of limitation is tolled due to defendant's fraudulent concealment; he does not make any separate argument specifically as to his CUTPA claim.

"General Statutes §42-110g (f) provides that an action alleging unfair trade practices under CUTPA 'may not be brought more than three years after the occurrence of a violation.'" <u>Navin v. Essex Sav. Bank</u>, 82 Conn. App. 255, 260 (2004).  Like the general tort statute of limitations, the CUTPA statute of limitations is an "occurrence" statute that runs from the date of the act or omission complained of, rather than the date of discovery. <u>See</u> <u>Fichera v. Mine Hill Corp.</u>, 207 Conn. 204, 212-13 (1988); <u>RBC Nice Bearings, Inc. v. Peer Bearing Co.</u>, No. 3:06-cv-1380 (VLB), 2009 U.S. Dist. LEXIS 102676, *63 (D. Conn. Oct. 29, 2009).

The plaintiff's CUTPA claim, like his tort claims, does not allege any misconduct after the October 28, 2004 purchase date, and it was filed more than three years after that date.  Because the plaintiff has failed to carry his burden to show that the statute of limitations should be tolled, the defendant is entitled to summary judgment as to Count 4.

IV.  <u>Conclusion</u>

The third-party defendant's Motion for Summary Judgment, doc. #46, is denied.  The defendant's Motion for Partial Summary Judgment, doc. #45, is granted.  The plaintiff may proceed on his contract claim.

SO ORDERED at Hartford, Connecticut this 26th day of March, 2010.

```
_____/s/_____
Donna F. Martinez
United States Magistrate Judge
```

13